UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN SATURNINO AVILA
LOPEZ,

        Petitioner,

    v.

WARDEN, SOUTH FLORIDA
DETENTION FACILITY, U.S.
ATTORNEY GENERAL,

        Respondents,

Case No. 2:26-cv-1693-KCD-NPM

## **ORDER**

Petitioner Juan Saturnino Avila Lopez is a Cuban national who arrived in the United States in 1980 as part of the Mariel boatlift. (*See* Doc. 1.)[1] After nearly a decade in the country, an immigration judge ordered his removal. But because the Government could not effectuate his return to Cuba due to diplomatic barriers, U.S. Immigration and Customs Enforcement ("ICE") released him on an order of supervision. On November 29, 2025, ICE revoked his supervision and detained him to execute the long-standing removal order. This habeas case followed.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Legal Standard

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

Lopez first argues that the Government illegally revoked his supervision because it did not provide the procedural protections afforded to Muriel Cubans under 8 C.F.R. § 212.12(h). (Doc. 1 at 7.) The Court cannot agree. *See Marquez-Coromina v. Hollingsworth*, 692 F. Supp. 2d 565, 571 (D. Md. 2010). Section 212.12 "addresses the procedure by which immigration parole may be granted or denied to Mariel Cubans; establishes the body responsible for making such decisions; sets forth the criteria and procedure for determining parole eligibility; and enumerates the circumstances in which immigration parole may be revoked." *Id.* Lopez was lawfully released into the country upon his arrival in the United States, which was later revoked. "The

2

regulation does not address continued detention after [a] removal order has been issued," as is the case here. *Id.*

Next, Lopez claims that he "was detained without due process." (Doc. 1 at 7.) This argument similarly fails. The Fifth Amendment entitles noncitizens to due process during deportation proceedings. At the same time, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a

penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Lopez cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Lopez's release specifically to enforce his outstanding removal order. Returning him to custody thus serves a recognized, legitimate government objective.

Nor are we near the constitutional danger zone. ICE detained Lopez on December 16, 2025. That is a far cry from the indefinite, limbo-like detention that the Supreme Court has rejected under the Fifth Amendment. *See*

*Zadvydas v. Davis*, 533 U.S. 678 (2001). Instead, it falls well within the six-month window the *Zadvydas* Court deemed presumptively reasonable to carry out a deportation. *Id.* at 701 (holding that executive agencies may not hold noncitizens longer than six months when removal is not foreseeable and stating, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing").

Lopez protests that his removal is not likely in the foreseeable future. (Doc. 1 at 7.) This argument fails too. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

## IV. Conclusion

Lopez has not established that his current detention is unlawful. But he may return to challenge his revocation if his continued detention becomes

5

unconstitutionally prolonged. Accordingly, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED WITHOUT PREJUDICE**. The Clerk of Court is **DIRECTED** to enter judgment, deny any pending motions as moot, and close this case.

ORDERED in Fort Myers, Florida on June 11, 2026.

Kyle C. Dudek
United States District Judge